IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CARDSOFT (ASSIGNMENT FOR THE BENEFIT OF CREDITORS), LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 2:13-cv-00290-JRG JURY TRIAL DEMANDED |
| FIRST DATA CORPORATION, FIRST DATA MERCHANT SERVICES CORPORATION, AND TASQ TECHNOLOGY, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY
AND FOR SANCTIONS AGAINST DEFENDANTS**

Pursuant to Federal Rule of Civil Procedure Rule 37 and Local Civil Rule 7, Plaintiff CardSoft (Assignment for the Benefit of Creditors), LLC ("CardSoft") respectfully requests that the Court order Defendants First Data Corporation, First Data Merchant Services Corporation, and TASQ Technology, Inc. (collectively, "Defendants"), to provide all relevant discovery in this case, including all relevant documents and information related to Defendants' usage revenue from the accused terminals, as soon as possible.

**I. INTRODUCTION**

CardSoft should have received Defendants' relevant financial information and documents months ago. This Court's Discovery Order, filed on September 3, 2013, required Defendants "[w]ithout awaiting a discovery request," to produce "all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action." (D.I. 30 at 2, 3). Moreover, although not required by rule, CardSoft has expressly asked Defendants for months for relevant

financial documents and information, including all documents and information related to terminal-usage revenue, *i.e.,* revenue received by Defendants from their customers' infringing use of the accused terminals in this case. Terminal-usage revenue, such as revenue from transaction fees, is exceedingly relevant to the issue of damages because over half of First Data's yearly revenue comes from the use of its terminals, as opposed to the sale of those terminals.

In April 2014, Defendants' counsel stated that they would ask their clients about producing documents related to terminal-usage revenue. Four months later, Defendants opined that producing this highly relevant financial data would take too much time and effort. Now, Defendants argue that they cannot provide either the total terminal-usage revenue in the U.S., or the amount of terminal-usage revenue received from the sale of accused terminals. Similarly, Defendants have failed to produce any financial data regarding accused terminals that First Data leases to its customers.

Indeed, with fact discovery ending this week, Defendants have refused to produce <u>any</u> documents or information related to the large amount of revenue that Defendants have obtained from the infringing use of the accused terminals by their customers. As such, Defendants have forced CardSoft to file this Motion to Compel in order to obtain highly relevant damages information that Defendants should have produced long ago.

## II.     BACKGROUND

CardSoft's Amended Complaint alleges that Defendants have infringed U.S. Patent Nos. 6,934,945 and 7,302,683 (collectively, the "Asserted Patents"). (D.I. 34). On August 3, 2013, CardSoft served its Preliminary Infringement Contentions, which identified a large number of terminals sold by Defendants, including many of the VeriFone terminals that had already been found by a jury in this District to infringe the Asserted Patents. *See* Ex. A, Preliminary

Infringement Contentions at 2.

Since at least April 2014, CardSoft has expressly requested information and documents relating to Defendants' revenues generated from their customers' infringing use of the accused terminals, *e.g.* transaction fees. *See* Ex. B, Aug. 14 Email from C. Stouffer to D. Rutowski; Ex. D; Aug. 14 Email from N. Setty to C. Stouffer. In August, Defendants stated that it was very time-consuming and burdensome for them to provide any data related to the large amount of usage fees received by Defendants from their customers' use of the accused terminals. *See* Aug. 14 Email from N. Setty to C. Stouffer. Now, Defendants argue that they "are not able" to provide either their "U.S. transaction processing fees by year" or the percentage of fees "earned by First Data as a result of the accused terminals." Ex. E; Sept. 3 Email from D. Rutowski to B. Golob.

To date, Defendants have yet to produce any usage-revenue information aside from First Data's publicly available 10-K filing. First Data's most recent 10-K states that usage fees, such as "transaction and processing service fees," account for at least 60% of First Data's 2013 revenue, "and are most reflective of [First Data's] core business performance." Ex. C, First Data 10-K at 25. First Data's 10-K also confirms that revenues are generated from discount fees, debit network fees, and the lease of POS devices such as the accused terminals in this case. *Id.* at 3. However, this document does not identify how much revenue is generated from the lease or usage of <u>any particular terminal or by any particular customer(s)</u>.

Accordingly, Defendants have failed to produce documents or information that would enable CardSoft to calculate the substantial revenue received by Defendants from the infringing use of the accused terminals by Defendants' customers. As such, CardSoft must now ask this Court to compel Defendants to produce all relevant financial information.

### III. ARGUMENT

Documents and information related to Defendants' revenue generated from the use of the accused terminals is highly relevant to damages in this case. Terminal-usage revenue, such as transaction fees, processing fees, debit network fees, and revenue obtained from leasing the accused products, accounts for at least 60% of First Data's yearly revenue. Ex. C, First Data 10-K at 3, 25.

For at least the past five months, CardSoft has repeatedly and expressly asked Defendants to produce all documents and information related to terminal-usage revenue, and in particular, documents and information sufficient to enable CardSoft to calculate the total revenue Defendants receive from the use of the accused terminals. *See, e.g.*, Ex. B, Aug 14 Email from C. Stouffer to D. Rutowski; Ex. D; Aug. 14 Email from N. Setty to C. Stouffer. To date, however, Defendants have only produced documents relating to revenue received from the sale of accused terminals. Given that sales are only a small fraction of the revenue Defendants derive from their infringement of the Asserted Patents, Defendants' failure to produce any additional documents or information is plainly intended to thwart CardSoft's efforts to discover information to support its case. This is a clear violation of the Federal Rules of Civil Procedure and the Local Rules of this Court.

As noted above, the only potentially relevant document produced by Defendants regarding revenue derived from the use of the accused terminals is First Data's publicly available 10-K for 2013, which does not specify which fees are generated from which products. Thus, by improperly withholding additional information relevant to usage fees, Defendants have frustrated CardSoft's ability to calculate the amount of revenue generated from the infringing use of the accused devices by Defendants' customers.

4

CardSoft's counsel specifically asked Defendants for documents and information regarding terminal-usage revenue at least <u>five months ago</u>. *See, e.g.*, Ex. B, Aug 14 Email from C. Stouffer to D. Rutowski. And Defendants have known which terminals were accused in this case for <u>over a year</u>. *See* Ex. A, Preliminary Infringement Contentions at 2. Nevertheless, Defendants waited until just last month to protest that it would be very time consuming and burdensome for them to produce usage revenue information for the accused terminals.[1] *See* Ex. D, Aug. 14 Email from N. Setty to C. Stouffer. Now, Defendants assert that they "are not able to provide" the terminal-usage revenue from the accused terminals, or even "the total US transaction processing fees by year." Ex. E; Sept. 3 Email from D. Rutowski to B. Golob. Defendants have had more than enough time to comply with CardSoft's request and any burdens or difficulties Defendants may face now in producing the requested information in a timely manner are of their own making.

CardSoft has repeatedly asked Defendants for this information. With fact discovery scheduled to end this week, however, CardSoft can no longer wait for Defendants to comply with their obligations. Accordingly, CardSoft is now forced to file this Motion to Compel. Because Defendants have no excuse for their extensive delay in producing highly relevant financial information, CardSoft also respectfully requests its costs and attorneys' fees related to the filing of this motion.

## IV. CONCLUSION

CardSoft respectfully requests that the Court: (i) compel Defendants to produce terminal-usage information and related documents for each of the accused terminals within three (3) days

---

[1] Defendants have not, however, sought a Protective Order from this Court despite their recent claim of undue burden.

from the Court's Order on this Motion; (ii) award CardSoft its attorneys' fees and costs relating to this Motion; and (iii) award such other relief as the Court deems appropriate.

Dated: September 10, 2014　　　　　　　Respectfully submitted,


By: */s/ Barry P. Golob*

William E. Davis, III
Texas State Bar No. 24047416
**THE DAVIS FIRM, PC**
222 N. Fredonia Street
Longview, TX 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661
Email: bdavis@bdavisfirm.com

Barry P. Golob
Donald R. McPhail
Chad O. Stouffer
**COZEN O'CONNOR**
The Army and Navy Building
1627 I Street, NW, Suite 1100
Washington, DC 20006
Telephone: (202) 912-4800
Facsimile: (202) 861-1905
Email:　bgolob@cozen.com
　　　　dmcphail@cozen.com
　　　　cstouffer@cozen.com

*Attorneys for Plaintiff Cardsoft*
*(Assignment For The Benefit Of Creditors), LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this the 10th day of September, 2014.

*/s/ Barry P. Golob*
Barry P. Golob

## CERTIFICATE OF CONFERENCE

This is to certify that counsel for Plaintiff has conferred with counsel for Defendants pursuant to Local Rule CV-7(h) concerning this motion and, despite good faith efforts, were unable to resolve the issues raised in this motion. The most recent conference occurred by telephone on September 8, 2014. The parties could not reach an agreement on the issues in this motion, and this motion is opposed. These discussions have conclusively ended in an impasse, which requires the Court to resolve the remaining disputes.

*/s/ Barry P. Golob*
Barry P. Golob